**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MTD Products Incorporated, *et al.*, | No. CV-20-00843-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Kowalski Construction Incorporated, *et al.*, | |
| Defendants. | |

Plaintiffs MTD Products, Inc. ("MTD") and Smurfit Kappa North America, LLC ("Smurfit Kappa") (collectively "Plaintiffs") have alleged claims for breach of contract and negligence against Defendants Kowalski Construction, Inc. ("Kowalski") (a general contractor) and Arizona Shoring & Bracing, LLC ("Arizona Shoring") (a subcontractor) (collectively "Defendants"). At issue are five motions: three Motions to Exclude and two Cross Motions for Summary Judgment. The Motions to Exclude are Plaintiffs' Motion to Exclude Mr. Thomas J. Kulaga, P.E. as an Expert (Doc. 82), to which Defendant Kowalski responded and Plaintiffs replied (Docs. 94, 96, respectively); Defendant Kowalski's Motion to Exclude Mr. Douglas Ward as an Expert (Doc. 86), to which Plaintiffs responded and Kowalski replied (Docs. 88, 95, respectively); and Defendant Kowalski's Motion to Exclude Mr. David Komm, P.E. as an Expert (Doc. 87), to which Plaintiffs responded and Kowalski replied (Docs. 92, 98, respectively). The Motions for Summary Judgment are Plaintiffs' Motion for Partial Summary Judgment (Doc. 80), to which Defendant Kowalski and Defendant Arizona Shoring responded and Plaintiffs replied (Docs. 102, 104, 107,

respectively); and Defendant Kowalski's Motion for Summary Judgment (Doc. 84), to which Plaintiffs responded and Defendant Kowalski replied (Docs. 99, 110, respectively). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

## I. BACKGROUND

MTD owned a warehouse facility in Chandler, Arizona. (Doc. 99 at 3.) Smurfit Kappa leased the facility from MTD for purposes of producing, storing, and processing paper products. (Doc. 99 at 3.) On August 18, 2017, an employee of Smurfit Kappa drove a forklift into a pre-cast concrete column which supported the roof structure. (Doc. 84 at 2.) When the employee hit the column, it caused the roof structure to fall and damaged the fire sprinkler system. (Doc. 84 at 2.) Shortly thereafter, Kowalski performed an emergency repair on the property at Plaintiffs' request. (Doc. 84 at 3.)

Later, in December 2017, MTD hired Kowalski as the general contractor to perform permanent structural repairs to the pre-cast concrete column damaged during the initial incident. (Doc. 99 at 3.) Plaintiffs contend and Defendants dispute that repair to the fire sprinkler system was also within the scope of work contemplated in the contract. (Docs. 84 at 4; 99 at 3.) Kowalski hired Arizona Shoring to conduct the shoring work for the project, including shoring for the fire sprinkler line. (Doc. 99 at 3.) Defendants assert and Plaintiffs deny that Kowalski presented a proposal (the "Metro Fire Proposal") to Plaintiffs' consultant Mr. Jeff Nicholson to cap off the affected sprinkler line before the commencement of the structural repairs. Defendants contend Mr. Nicholson did not approve the proposal due to the cost. (Doc. 84 at 12.) Defendants further assert Mr. Nicholson's rejection meant Kowalski had to maintain operation of the current fire sprinkler system, which was supposed to be a temporary repair, while performing the permanent structural repairs. (Doc. 84 at 12.) As a result, Kowalski had to drain the fire sprinkler system at the start of the workday and recharge the system at the end of each workday. (Doc. 84 at 12.)

On March 26, 2018, while Arizona Shoring workers were raising the roof structure, Plaintiffs allege Defendants noticed the fire sprinkler system was restricting movement. (Doc. 99 at 6.) To address the issue, Plaintiffs allege Kowalski and/or Arizona Shoring made the decision to cut the fire sprinkler line supports so that they could continue to raise the roof structure. (Doc. 99 at 6.) After cutting the supports, Plaintiffs allege the sprinkler system was left charged and under pressure. (Doc. 99 at 6.) On or around March 30, 2018, the fire sprinkler line, while charged, separated at the temporary repair site damaging the building and Smurfit Kappa's inventory. (Doc. 99 at 6.) Plaintiffs commenced the present action due to the damages they suffered by the event.

## II.   MOTIONS TO EXCLUDE

Both parties have filed Motions to Exclude expert testimony. The Court addresses each below.

### A.   Legal Standard

Under Rule 702, an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The trial judge acts as the "gatekeeper" of expert witness testimony by engaging in a two-part analysis. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592 (1993). First, the trial judge must determine that the proposed expert witness testimony is based on scientific, technical, or other specialized knowledge. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003). Second, the trial court must ensure that the proposed testimony is relevant—that it "will assist the trier of fact to understand or determine a fact in issue." *Id.* "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401.

"The inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.*; *See also Wendell v. GlaxoSmithKline*, 858 F.3d 1227, 1232 (9th Cir. 2017). The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire*, 526 U.S. at 152. "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (internal citations omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted).

**B.     Analysis**

There are three Motions to Exclude before the Court: one from the Plaintiffs and two from Defendant Kowalski. The Court begins its analysis with Plaintiffs' Motion.

**1.     Plaintiffs' Motion to Exclude Mr. Kulaga**

Plaintiffs argue portions of Mr. Kulaga's testimony go beyond the scope of his expertise and that those portions should be excluded. (Doc. 82 at 4.) Plaintiffs do not dispute Mr. Kulaga is an expert in mechanical engineering but argue he is unqualified to opine on general contracting. (Doc. 82 at 4.) To support their argument, Plaintiffs cite Mr. Kulaga's employment history. Mr. Kulaga has not worked as a general contractor, is not licensed as a general contractor, and has no formal training or education in general contracting. (Doc. 96 at 2.) Additionally, in his deposition, Mr. Kulaga testified he did not have an opinion on the standard of care for general contractors and subcontractors in this case. (Doc. 96 at 8.) Accordingly, Plaintiffs argue any non-mechanical engineering opinions offered by Mr. Kulaga are beyond the scope of his expertise and, as such, should be excluded. (Doc. 82 at 10.)

In response Kowalski contends Mr. Kulaga's non-mechanical engineering opinions should not be excluded because he is qualified to opine on the subject based on his experience. (Doc. 94 at 5.) According to Kowalski, "Mr. Kulaga's experience regarding general contracting includes commercial and insurance work wherein he was retained by the general contractor or insurance company to opine on the quality of work, whether it was proper or not, [and] whether they followed instructions or design." (Doc. 94 at 5-6) (internal citations omitted). Further, "while working as the director of engineering at a company, he would work with general contractors to develop plans to define the scope of work, cost, and requirements for the project." (Doc. 94 at 6.) As a part of this work, "Mr. Kulaga would meet with contractors, do site walks, exchange emails, and [make] phone calls to develop the scope prior to putting on paper." (Doc. 94 at 6.) Kowalski contends these experiences qualify Mr. Kulaga as an expert in general contracting.

Though it is true a witness can qualify as an expert through practical experience in a particular field, Mr. Kulaga's experience working alongside a general contractor does not qualify him as an expert in general contracting. *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991) ("A witness can qualify as an expert through practical experience in a particular field, not just through academic training.") As Plaintiffs aptly explain, a lawyer who routinely works with a doctor in evaluating clients' medical conditions is not qualified to opine on medical issues. Similarly, Mr. Kulaga does not have the requisite education or experience to qualify as an expert in general construction. His work alongside general contractors, regardless of how extensive, does not imbue expertise in general construction upon him. Accordingly, Mr. Kulaga's testimony will be limited to mechanical engineering, and opinions related to general construction will be excluded.

### 2. Defendant Kowalski's Motion to Exclude Mr. Ward

Similar to Plaintiffs' Motion, Defendant Kowalski argues portions of Mr. Ward's testimony go beyond the scope of his expertise and that those portions should be excluded. (Doc. 86 at 3.) Kowalski asserts Mr. Ward's testimony regarding the cause of the sprinkler line failure should be precluded because he does not have an engineering background.

(Doc. 86 at 3.) By contrast, Plaintiffs contend Mr. Ward is qualified to discuss the circumstances surrounding the sprinkler line failure "from a contractor's perspective." (Doc. 88 at 5.) To support their assertion, Plaintiffs cite Mr. Ward's fifty years of experience as a general contractor in the construction field. Like Mr. Kulaga, Mr. Ward is certainly an expert in his respective field but his fifty years' experience in general construction does not qualify him to testify as to why the sprinkler line failed. Accordingly, because he is not an engineer, Mr. Ward will be precluded from testifying about the cause of the fire sprinkler line failure.

### 3. Defendant Kowalski's Motion to Exclude Mr. Komm

Defendant Kowalski also seeks to exclude Mr. Komm from "opining on two specific things [: the] standard of care as to general contractors and damages." (Doc. 98 at 3.) Plaintiffs concede Mr. Komm shall not opine on the standard of care applicable to general contractors. (Doc. 92 at 6.) As for damages, Plaintiffs argue Kowalski has not identified which, if any, of Mr. Komm's conclusions relate to damages. (Doc. 92 at 4.) The Court agrees. As it relates to damages, the Court cannot determine what opinions in Mr. Komm's report Defendant seeks to exclude. "The proponent of expert testimony has the ultimate burden of showing that the expert is qualified and the proposed testimony admissible, but Defendants have the burden of at least identifying the opinions Plaintiffs must defend in a *Daubert* motion." *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 775296, at *3 (D. Ariz. Feb. 8, 2018). Due to the state of the briefing, the Court cannot conclude that any portion of Mr. Komm's testimony relates to damages. Accordingly, the portion of Kowalski's Motion to Exclude relating to damages is denied.

**III. MOTIONS FOR SUMMARY JUDGMENT**

In addition to the Motions to Exclude, both parties filed Motions for Summary Judgment. The Court addresses both below.

**A.    Legal Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material

fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

**B.     Analysis**

The Court begins its analysis with Plaintiffs' Motion and then moves to Kowalski's Motion.

**1.     Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs contend they have met their burden of establishing negligence on the part of both Defendants. As a result, Plaintiffs move for Summary Judgment on their negligence

claim. In their briefing however, Plaintiffs do not pin cite to specific documents in the record to support that each element of negligence has been met. (Doc. 80 at 10-11.) Instead, Plaintiffs generally state that because their expert report is unrebutted, Plaintiffs' Motion should be granted as a matter of law. (Doc. 80 at 11-16.) Rule 56 provides that the movant must cite "to particular parts of materials in the record," and "[t]he court need consider only the cited materials" in the briefings. Fed. R. Civ. P. 56(c)(1), (3); *see also Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs."). Without citing to specifics in the record, Plaintiffs' argument is unsupported and conclusory.

Further, there are underlying questions of fact embedded in the expert reports that are the exclusive province of the jury. For example, according to Plaintiffs, the sprinkler line was not supported by shoring at the time of the failure. (Doc. 107 at 4.) Additionally, according to Plaintiffs, part of Mr. Ward's expert testimony is based on this fact. (Doc. 107 at 4.) Kowalski, however, presents controverting evidence that the sprinkler line was supported by shoring. (Doc. 102 at 12.) As a result, there is a genuine dispute of material fact as to whether the sprinkler line that failed was supported by shoring. For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgement is denied.

### 2. Defendant Kowalski's Motion for Summary Judgment

Defendant Kowalski moves for Summary Judgment on Plaintiffs' contractual and negligence claims. The Court first address the contractual claim and then moves to the negligence claim.

#### a. Plaintiffs' Contractual Claim

Defendant Kowalski contends it "performed all material obligations under the December 2017 Contract." (Doc. 84 at 10.) Kowalski further argues the scope of the work pursuant to the contract was to "1) raise the double T roof deck, 2) raise the girder, 3) repair the roof structure, and 4) replace [the] column and immediate area of slab removal." (Doc. 84 at 10.) By contrast, Plaintiffs assert the contract "also included a scope of work

to repair the fire sprinkler system." (Doc. 99 at 4.) To support this assertion, Plaintiffs point to the "Fire protection" section of the contract. (Doc. 99 at 4.)

The "Fire protection" section states "[c]urrent repair maintains operation of system. Budget amount to complete repairs once structure is brought back up into place." (Doc. 99 at 4.) Kowalski argues that "'[c]urrent repairs maintains operation of system,' means the temporary repair maintained the operation of the system so the facility could remain open and the budget amount to complete the repairs will be added once the structure is brought back into place." (Doc. 84 at 5.) On the other hand, Plaintiffs urge that, during a deposition, Kowalski's "designated representative confirmed that a permanent repair of the structure for the fire system was intended under the "Fire protection" section [of the contract]." (Doc. 99 at 4.) Kowalski's Motion depends on its claim that the scope of work contemplated by the contract did not include repair or replacement of the fire sprinkler system. Plaintiffs have raised a genuine issue of material fact as to whether the sprinkler system repair was included within the scope of work contemplated by the contract.

Kowalski also argues it performed "its work in a reasonable and workmanlike manner." (Doc. 84 at 11.) A contractor impliedly warrants that he will perform in a workmanlike manner even though the contract itself does not contain an express warranty of good workmanship. *See Reliable Elec. Co. v. Clinton Campbell Contractor, Inc.*, 459 P.2d 98, (Ariz. Ct. App. 1969). Kowalski argues the contract required Defendant to "repair the structure in accordance with restrictions placed on it by [P]laintiffs." (Doc. 84 at 12.) A key restriction, Kowalski argues, was that Plaintiffs' consultant, Mr. Nicholson would not approve Kowalski's proposal to remove and replace the sprinkler system due to the cost of doing so. (Doc. 84 at 12.)

Plaintiffs assert neither Mr. Nicholson nor Plaintiffs received or rejected the Metro Fire Proposal. (Doc. 99 at 11.) Additionally, Plaintiffs argue testimony from Plaintiffs' expert, Mr. Ward, establishes that Kowalski did not meet the appropriate standard of care, thus violating the implied warranty of good workmanship.[1] Mr. Ward's testimony

---

[1] Plaintiffs argue that A.R.S. § 12-2602 mandates that "expert opinion testimony is necessary to evaluate a licensed professional's standard of care or liability for a 'claim'."

- 9 -

concludes Kowalski breached its duty of care to Plaintiffs by "engaging in conduct that fell below the applicable standard of care." (Doc. 99 at 12.) Accordingly, there is a genuine issue of material fact as to whether Kowalski performed in a reasonable and workmanlike manner.

### b. Plaintiffs' Negligence Claim

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (2007). Defendant Kowalski asserts Plaintiffs' negligence claim fails because Kowalski's conduct was not the proximate cause of Plaintiffs' damages and because Kowalski did not owe a duty to protect Plaintiffs' property during repairs. (Doc. 84 at 13-14.) The Court begins its analysis with proximate cause and then moves to duty.

Kowalski claims Plaintiffs were the proximate cause of the loss because the contract did not include the repair of the fire sprinkler system and because Plaintiffs did not accept the Metro Fire Proposal. (Doc. 84 at 5, 12.) As the Court previously stated, Plaintiffs have raised a genuine issue of material fact as to whether the sprinkler system repair was included within the scope of work contemplated by the contract. Further, as stated earlier, Plaintiffs assert neither they nor Mr. Nicholson, Plaintiffs' consultant, received or rejected the Metro Fire Proposal. (Doc. 99 at 11.) Accordingly, there exists a genuine issue of material fact as to whether Kowalski was the proximate cause of the loss.

Kowalski also asserts that it did not have a duty to protect Smurfit Kappa's property because it was not contained within Kowalski's work area. (Doc. 84 at 14.) In Arizona, contractors owe a duty of care to those who may be potentially harmed during the performance of their work. *Teufel v. Am. Fam. Mut. Ins. Co.*, 419 P.3d 546, 551 (Ariz. 2018) (a builder or contractor is held to a standard of reasonable care in the conduct of its

---

(Doc. 99 at 12.) Nothing in the state court record shows Plaintiffs certified that experts are required in this case. (See Doc. 1.) Accordingly, the Court cannot determine which part of A.R.S.§ 12-2602, if any, applies.

- 10 -

duties to the foreseeable users of the property). Kowalski argues it "included a clause in the contract, signed by [Plaintiffs], requiring the [P]laintiffs to remove personal property from the area." (Doc. 110 at 8.) Therefore, Kowalski contends, Plaintiffs "had a duty to remove [their] inventory" from the area and by not doing so Plaintiffs assumed the risk of the loss. Arizona, however, has established that builders owe "a common law duty of care that is independent of a contractual duty." *Teufel*, 419 P.3d 546 at 388. Accordingly, as it pertains to Plaintiffs' negligence claim, the contract provision does not absolve Kowalski from any potential duty toward the Plaintiffs. As stated earlier, Plaintiffs argue Mr. Ward's testimony states that Kowalski may have breached its duty of care to Plaintiffs by "engaging in conduct that fell below the applicable standard of care." (Doc. 99 at 12.) Plaintiffs' expert testimony creates a genuine issue of material fact as to whether Kowalski breached its duty toward Plaintiffs.

Lastly, Kowalski argues Plaintiff Smurfit Kappa is "comparatively at fault" for failing to remove its inventory from the area and, as a result, Kowalski does not owe a duty to it. (Doc. 110 at 8.) Arizona adopted a comparative fault system in A.R.S. § 12–2506. In actions for personal injury, property damage, or wrongful death, a defendant is liable "for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault." A.R.S. § 12-2506(A). Arguing Plaintiffs may also be at fault for the damage caused by the sprinkler failure does not absolve Kowalski of the duty it may have owed the Plaintiff. For the foregoing reasons, Kowalski's Motion for Summary Judgment is denied.

## IV. CONCLUSION

In sum, the Court grants Plaintiffs' Motion to Exclude some of Mr. Kulaga's testimony. (Doc. 82.) Mr. Kulaga's testimony will be limited to mechanical engineering and exclude opinions related to general construction. The Court also grants Defendant Kowalski's Motion to Exclude portions of Mr. Ward's testimony. (Doc. 86.) Because he is not an engineer, Mr. Ward will be precluded from testifying about the cause of the fire sprinkler line failure. Finally, the Court grants in part and denies in part Defendant

Kowalski's Motion to Exclude some of Mr. Komm's testimony. (Doc. 98.) The Court grants Kowalski's request to prevent Mr. Komm from opining on the standard of care for general contractors but denies Kowalski's request to preclude Mr. Komm from testifying about damages. The Court denies Plaintiffs' Motion for Partial Summary Judgment (Doc. 80) and denies Defendant Kowalski's Motion for Summary Judgment (Doc. 84). This case will proceed to trial.

**IT IS ORDERED** granting Plaintiffs' Motion to Exclude some of Mr. Kulaga's testimony (Doc. 82).

**IT IS FURTHER ORDERED** granting Defendant Kowalski's Motion to Exclude portions of Mr. Ward's testimony (Doc. 86).

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant Kowalski's Motion to Exclude some of Mr. Komm's testimony (Doc. 87).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Partial Summary Judgment (Doc. 80).

**IT IS FURTHER ORDERED** denying Defendant Kowalski's Motion for Summary Judgment (Doc. 84).

**IT IS FURTHER ORDERED** that the Court will set a pre-trial status conference by separate Order.

Dated this 31st day of March, 2022.

Honorable John J. Tuchi
United States District Judge